THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* JOHN PARR, APPELLANT.

42h 313
58ad365

42h 313
f 66 AD³571

42h 313
72 AD ¹370

*Evidence — the opinion of a witness, as to who is the person alluded to in a libelous publication, is not admissible — meaning of the term " infamous crime " — a libel is not one.*

Upon the trial of the defendant for an alleged libel upon one Leo Oppenheim, it appeared that Oppenheim's name was not mentioned in the libel, but it was

claimed by The People that he was the person intended, and that he was pointed
out by the words "the Pearl street tailor" and by the name "Leo." A wit-
ness, called by The People, who was asked, "When you read this article did
you recognize its application to any particular individual?" answered "I did."
To the question, "Who was the person that you recognized that this article
referred to?" he answered "Leo Oppenheim."

*Held*, that the court erred in admitting the evidence against the objection and
exception of the defendant.

That it was for the people to show facts from which the jury might infer that
Oppenheim was the person intended by the defendant, and that the opinion of
the witness should not have been received.

*People* v. *Croswell* (3 Johns. Cases, 340); *Genet* v. *Mitchell* (7 Johns., 120); *Hayes* v.
*Ball* (72 N. Y., 420) distinguished.

Libel is not an "infamous crime" within the meaning of that term as used in
section 68 of the Code of Civil Procedure, conferring upon the Court of Special
Sessions, in the city of Albany, jurisdiction to try and determine all cases of
petit larceny charged as a first offense, and all misdemeanors, "not being
infamous crimes," committed within the city.

APPEAL from a judgment of the Court of Special Sessions in the
city of Albany, convicting the defendant, John Parr, of the crime
of libel, and sentencing him to imprisonment in the penitentiary
for the term of six months.

The libel was published by the defendant in a newspaper called
"The Owl."

*Edward J. Meegan*, for the appellant.

*Hugh Reilly*, district attorney, for the respondent.

LEARNED, P. J.:

This was a prosecution for an alleged libel upon Leo Oppenheim.
His name was not mentioned in the libel, but it was claimed by the
people that he was intended, and that he was pointed out by
the words "the Pearl street tailor," and by the name "Leo." On
the trial a witness was asked, on behalf of the people, "When you
read this article did you recognize its application to any particular
individual?" He answered "I did." Then he was asked, "Who
was the person that you recognized that this article referred to?"
and he answered, "Leo Oppenheim." These questions were duly
objected to and exception taken. Similar questions were put to
two other witnesses; objections made and exceptions taken.

This evidence was improper. It was for the people to show facts

from which the jury might infer that Oppenheim was the person intended by defendant. The testimony of witnesses that they recognized Oppenheim, as referred to, was only the statement of their opinion. And this matter was not one for experts. Their opinion must have been based upon facts known to them. They should have testified only to such facts.

If this kind of testimony were proper, then the defendant could have called witnesses to testify that they did *not* recognize Oppenheim as the person referred to. But such testimony would be plainly improper. This principle is distinctly decided in *Van Vechten* v. *Hopkins* (5 John., 211); *Gibson* v. *Williams* (4 Wend., 320); *Maynard* v. *Beardsley* (7 id., 561, in the Ct. of Errors); *Weed* v *Bibbins* (32 Barb., 315); and by implication in *Wright* v. *Page* (36 id., 441). Two cases were cited by the people as sustaining the court below, viz: *People* v *Croswell* (3 Johns. cases, 340), and *Genet* v. *Mitchell* (7 Johns., 120). In the former no question or decision was made upon this point. The whole discussion is upon the right of a jury to determine the whole issue, and on the right of defendant to show the truth of the statement alleged to be a libel. In the other case the court recognize *Van Vechten* v. *Hopkins* as sound law. The testimony given by the witness had not been objected to, and was quite immaterial.

It is said by the counsel for the people that the judgment should not be reversed, because there is evidence that defendant admitted to a witness that Oppenheim was intended. But we cannot say that the jury would have believed the evidence as to this admission, if it had not been fortified by the illegal evidence of the opinions of witnesses.

We are referred to the language of the court in *Hayes* v. *Ball* (72 N. Y., 420), as supporting the position of the people. The question now under consideration was not involved in that case. It is very possible that in the case of verbal slander, if all the persons who heard the alleged slander testify that they understood the words in a sense entirely harmless, this may be a good defence; because, in that case, the defendant has not conveyed to the mind of any person a charge or disgraceful statement in respect to the plaintiff.

But the present is a very different case. Here is a libelous publication. The attempt is not to show that it was understood by *all*

*readers* in a harmless sense.   But the attempt is to show that it is aimed at a particular person by the opinion of several who read it.   It is unquestionably proper and important to show that fact. But it must be shown by circumstances surrounding the parties. The circumstances which induced the belief in the minds of the witnesses that Oppenheim was the man intended, would have perhaps produced the same belief in the minds of the jury.   At any rate the defendant was entitled to the judgment of the jury on that point.

A question is raised as to the jurisdiction of the Court of Special Sessions of Albany.   It has jurisdiction, among other things, of "all misdemeanors, not being infamous crimes, committed within the city."   (Sec. 68 Code Crim. Proc.)

The defendant claims that the publication of a libel is an infamous crime.

The repeal, by chapter 593, Laws of 1886 of section 31, title 7, chapter I, part 4, Revised Statutes, has left us to the common law to determine what are infamous crimes.   It is quite unfortunate that so important an exception should be expressed in words which have always been somewhat vague in their meaning.

The question what crimes were infamous used to be important principally because a conviction for any of such crimes excluded the convicted person from being a witness.   That rule is abrogated. (Penal Code, 714; Code Civ. Proc., 832.)

Still, the words " infamous crimes" in section 68 above cited, must apply to such crimes as were infamous at common law.

Blackstone mentions, as making one infamous, " treason, felony, perjury or conspiracy, or if, for some infamous offense, he hath received judgment of the pillory, tumbrel or the like, or to be branded, whipt or stigmatized, or if he be outlawed or excommunicated, or hath been attainted of false verdict, *præmunire* or forgery." (3 Bl. Com. 370, 364.)

If the punishment inflicted were to determine the question of infamy, then the publication of a libel might have been an infamous crime.   (*Tutchin's Case*, 14 State Trials, 1095.)

But the better opinion is, that it is the nature of the crime, and not the punishment, which determines the question, and that an infamous crime is an offense "implying such a dereliction of moral principle as carries with it a conviction of a total disregard to the

obligation of an oath." (Per Sir Wm. Scott, quoted in 1 Green. Ev. 373 ; Abbott's Law Dict., title "Infamous Crimes.")

In that section Greenleaf gives as the enumeration of infamous crimes : treason, felony and the *crimen falsi.* The publication of a libel certainly is not within the first or the second. Nor is it within the third, the *crimen falsi ;* which implies some fraud or deceit, and which of itself must indicate a bad and immoral character.

Now, on the contrary, the publication of a libel, while it may sometimes be done with a very bad intent, does not *necessarily* imply disgraceful or immoral motives. It is not necessary to refer to the many well known convictions in England of men influenced by patriotic motives, which prove this assertion. Certainly, the crime is not one which involves, necessarily, deception or dishonesty. On the contrary, its *publicity* is of the essence of the wrong.

We do not think, therefore, that the publication of a libel is, in its nature, an infamous crime ; though it may sometimes show a malevolent or a contemptible spirit.

The judgment and conviction should be reversed, and new trial granted.

BOCKES and LANDON, J.J., concurred.

Judgment and conviction reversed, new trial granted.